IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES BROWN, )
 )
 Plaintiff, )
 )
vs. ) CIVIL NO. 09-240-GPM
 )
WEXFORD HEALTH SOURCES, INC., *et* )
*al.*, )
 )
 Defendants. )

# **MEMORANDUM AND ORDER**

**MURPHY, District Judge:**

Plaintiff, an inmate at the Lawrence Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on

its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, No. 08-4286, 2009 WL 2535731, at *5 (7th Cir. Aug. 20, 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Service*, No. 06-4260, 2009 WL 2498580, at *2 (7th Cir. Aug. 18, 2009).

### THE COMPLAINT

On March 25, 2007, Plaintiff filed an "Emergency Sick Call Request" to the medical unit at Lawrence Correctional Center because back pain made it difficult for him to walk. In his request, Plaintiff stated that he had tried taking ibuprofen and other non-aspirin pain relief medications, but that they were ineffective. Plaintiff requested to be examined by a medical doctor.

On March 28, 2007, a nurse came to Plaintiff's cell and gave Plaintiff some ibuprofen and a tube of analgesic cream.

On March 29, 2007, Plaintiff "declared a medical emergency" to Corrections Officer Dodd (not a defendant in this action) because his condition had worsened. Dodd reported this to his sergeant (also not a defendant) who, in turn, informed the medical unit. The sergeant informed Plaintiff that he had spoken to the medical unit and that a nurse was coming over to the housing unit with a wheel chair. Later, however, the medical unit informed the correctional officers that no one was coming over, but that Plaintiff had been issued a "medical lay-in."

On March 30, 2007, Plaintiff again declared another "medical emergency" due to his back pain. Dodd reported this to the medical unit who responded that Plaintiff was already on "medical lay-in."

On March 31, 2007, his condition becoming "critical," Plaintiff declared yet another "medical emergency." Observing Plaintiff's condition, Dodd called over to the medical unit and informed them of the situation. After talking with the medical unit, Dodd returned to Plaintiff's cell and informed Plaintiff that he had spoken to Defendant Darnold who had stated to him that Plaintiff would "just sit over in the infirmary for 23 hours because [Plaintiff] wouldn't be receiving … [anymore] medications for pain." Dodd then asked Plaintiff if he still wanted to go to the medical unit and Plaintiff responded affirmatively.

Defendant Darnold then arrived at Plaintiff's housing unit with a wheelchair. Plaintiff left his cell and "limped … haltingly" down a set of stairs. Upon witnessing Plaintiff walking, Defendant Darnold stated that "you['re] walking; you're not getting no x-ray and no muscle relaxant." Although Plaintiff was experiencing "contractions" and "spasms" in his back, Darnold pushed Plaintiff's wheelchair "recklessly" to the medical unit "like she was trying to cause [Plaintiff] more pain." Once at the infirmary, Plaintiff was instructed by Defendant Clevy to lay down in room A, bed 8. But he had to walk back to the room and make the bed there himself without any assistance from Clevy. Plaintiff did receive assistance from another inmate/patient. Defendant Clevy gave Plaintiff ibuprofen but did not give Plaintiff the muscle relaxant he requested. Plaintiff asked for a heating pad or heat pack, but Clevy informed Plaintiff that she didn't have any. Clevy also told Plaintiff that the doctor had told her to give him just the ibuprofen.

Plaintiff laid in the medical unit from about 8:30 a.m. to 7:30 p.m. At that point, Plaintiff

could no longer tolerate the pain and began hollering and yelling. A nurse on the night shift gave Plaintiff some type of pain medication and Plaintiff states he passed out.

On April 1, 2007, Defendant Clevy informed Plaintiff that he would be transferred back to his housing unit after lunch. With the aid of another inmate, Plaintiff got dressed. Plaintiff then requested a wheelchair or crutches because he could not walk due to the pain and numbness in his leg. Defendant Clevy gave Plaintiff two Tylenol pills so that it would "be in [Plaintiff's] system" for the walk back to his cell. Plaintiff took the Tylenol and waited 25 minutes. Plaintiff then attempted to walk with the assistance of a "health care porter," but he began experiencing spasms, fell to the floor, and began yelling in pain and for assistance. According to Plaintiff, 10 minutes passed before he got back into bed with the assistance of another inmate/patient. When Defendant Clevy arrived back at Plaintiff's bed, he was bent over in a ball and yelling to be taken to a hospital. Defendant Clevy informed Plaintiff that she could not send Plaintiff to the hospital because no warden was on duty and she could not just send Plaintiff to the hospital. Defendant Clevy then instructed Plaintiff to roll over on his back. Plaintiff stated that he could not roll on to his back due to the pain. Defendant Clevy then went to the end of Plaintiff's bed, grabbed his feet, and forcefully pulled them towards her which straightened out Plaintiff's legs. Plaintiff yelled in pain. Defendant Clevy then informed Plaintiff that she needed to examine him. Plaintiff responded "don't you touch me anymore … call the warden I want to be taken to a hospital."

At this point, Defendant Clevy informed Plaintiff that he had kidney stones and that he was only going to pass them by drinking some water. Plaintiff contends this diagnosis was "fake." Defendant Clevy left the room, but returned a few minutes later with some "crushed pills she called muscle relaxers." She informed Plaintiff that she had crushed the pills so that "they would work

right away." Plaintiff took the medicine and, after about 10 minutes, he was able to move again. Plaintiff complains that during these events he was never examined by "a licensed medical doctor, licensed to practice in the State of Illinois." Plaintiff states that he continues to suffer numbness in his right leg and that he has "little to no reflexes in it."

Plaintiff states that he started to file grievances concerning the events which occurred while he was confined in the medical unit, but he was threatened by Defendant Darnold that he would receive no treatment for his condition. It appears, however, that Plaintiff did file a grievance or grievances, alleging that he was provided negligent medical care and assaulted (by Defendant Clevy) while confined in the medical unit. Plaintiff states that these grievances were ignored or denied on various grounds – including being denied as untimely filed. These actions then triggered more grievances or correspondence in which Plaintiff disputed whether he had timely filed the initial grievance. Plaintiff states that these actions were designed to frustrate his "right to exhaust the grievance process." Plaintiff further contends that these actions were done in a "conspiracy to cover up" the alleged wrongdoing by Defendants Darnold and Clevy.

Based on the allegations of the complaint, the Court finds it convenient to divide Plaintiff's *pro se* action into four counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **COUNT 1:** Against Defendants Darnold and Clevy for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment.
>
> **COUNT 2:** Against Defendant Darnold for retaliating against Plaintiff for exercising his First Amendment right to file a grievance by making threats to withhold medical treatment.
>
> **COUNT 3:** Against Defendants Walker, Meek, Ryker, Stevens, Harvey, Volkman, and

>           Ford for conspiring to "cover-up" the alleged medical malpractice and assault
>           of Defendants Darnold and Clevy by denying and ignoring his grievances.

**COUNT 4**:   Against Defendants Walker, Meek, Ryker, Stevens, Harvy, Volkman, and Ford for denying him his "right to exhaust the grievance process."

**DISCUSSION**

Counts 1 and 2 of the complaint survive threshold review under 28 U.S.C. § 1915A and cannot be dismissed at this time. Therefore, the Court will direct Defendants Darnold and Clevy to respond to this complaint.

Count 3 of the complaint, however, is dismissed pursuant to § 1915A. Civil conspiracy claims are cognizable under 42 U.S.C. § 1983. *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under § 1983). However, conspiracy is not an independent basis of liability in § 1983 actions. *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). "For liability under § 1983 to attach to a conspiracy claim, defendants must conspire to deny plaintiffs their constitutional rights." *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996). Thus, for Plaintiff's conspiracy claim to actionable, there must be some cognizable underlying constitutional violation.

"[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982). In this case, the underlying actions were allegedly committed (and completed) by Defendants Darnold and Clevy prior to the filing of the grievances. There is no allegation that those Defendants who were involved with Plaintiff's grievances

participated in (or even knew about) the alleged denial of adequate medical care until after the fact. Therefore, what actions these Defendants took with regard to Plaintiff's grievances had no effect on the underlying denial of medical care. As such, the Court can discern no underlying constitutional violation upon which a conspiracy claim can rest.

Count 4 of the complaint also is dismissed. Again, there is no constitutional right to a grievance procedure. *Maust*, 959 F.2d at 648; *Shango*, 681 F.2d at 1091. Title 42 U.S.C. § 1997e(a) requires exhaustion only of such administrative remedies "as are available." That a remedy exists on paper does not mean that a remedy is available in fact. *See, e.g., Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (failure to provide grievance form made remedy unavailable to inmate); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (failure to respond to inmate's grievance made remedy unavailable). Thus, Plaintiff's failure to complete the written grievance process is not necessarily fatal to his action. Plaintiff is not required to affirmatively plead exhaustion in his complaint. Instead, exhaustion of administrative remedies is an affirmative defense, subject to waiver. *Jones v. Bock*, 549 U.S. 199, 212 (2007); *Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th cir. 2008). Accordingly, the alleged impediments to Plaintiff's grievances does not rise to the level of a constitutional violation.

Plaintiff's claims against Defendant Wexford Health Sources, Inc., (Wexford) also are dismissed pursuant to § 1915A. The complaint contains no allegations connecting Wexford to any of the constitutional violations alleged in the complaint. There is no indication that Wexford had a policy or practice that caused the alleged violation of Plaintiff's rights. *See Woodward v. Corr. Medical Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). (corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the violation). Therefore,

Plaintiff's claims against Wexford are dismissed.

Also before the Court is Plaintiff's motion for appointment of counsel (Doc. 3). There is no absolute right to appointment of counsel in a civil case. *Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *Peterson v. Nadler*, 452 F.2d 754 (8th Cir. 1971). When presented with a request to appoint counsel, the Court must make the following inquiries: "(1) has the ... plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself." *Pruitt v. Mote*, 503 F.3d 647, 854-55 (7th Cir. 2007). With regard to the first step of the inquiry, there is no indication at all whether Plaintiff has attempted to obtain counsel or been effectively precluded from doing so. Therefore, Plaintiff's motion for appointment of counsel (Doc. 3) is denied without prejudice.

### SUMMARY

**IT IS HEREBY ORDERED** that Counts 3 and 4 of the complaint are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A. Plaintiff is advised that the dismissal of these counts will count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that because there are no claims currently pending against them, Defendants Wexford Health Sources, Inc.; Walker; Meek; Ryker; Stevenson; Harvey; Volkman; Moran; and Ford are **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel (Doc. 3) is **DENIED** without prejudice.

The Clerk of Court is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **Darnold and Clevy**. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff,

and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants **Darnold and Clevy** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the complaint, applicable Forms 1A and 1B, and this Memorandum and Order. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Illinois Department of Corrections (I.D.O.C.) who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a Court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from I.D.O.C. pursuant to such order shall not be maintained in the Court file nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received. If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk of Court prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon that defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file

the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally-served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless that defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon Defendants or, if appearance has been entered by counsel, upon their attorney(s), a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to Defendants or their counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule of the United States District Court for the Southern District of Illinois 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts. This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

If Plaintiff does not comply with this Order, this case will be dismissed for failure to comply with an order of this Court. FED. R. CIV. P. 41(b); *see generally Ladien v. Astrachan,* 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga,* 34 F.3d 466 (7th Cir. 1994).

**IT IS SO ORDERED.**

DATED: 09/01/09

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge