IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 09-240-GPM |
| | ) |
| DANA RENEE DARNOLD and | ) |
| KIMBERLEY J. CLEVY, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This matter came before the Court on August 8, 2011, for a hearing on the motion for summary judgment filed by Defendants Dana Renee Darnold and Kimberley J. Clevy. For the following reasons, the motion is granted.

## FACTUAL BACKGROUND

Plaintiff James Brown, an inmate at the Lawrence Correctional Center, filed this action under 42 U.S.C. § 1983 for deprivations of his constitutional rights by Defendants Darnold and Clevy, who are nurses at the Lawrence Correctional Center. Sometime around March 25, 2007, Plaintiff began experiencing pain in his lower back. He completed a resident request slip requesting to see a doctor because the ibuprofen and non-aspirin pain reliever he purchased from the commissary were no longer working. On March 28, 2007, a nurse gave Plaintiff ibuprofen, analgesic balm, and a cold compress. Plaintiff maintains that these treatments were ineffective and did not relieve his pain. The following day, Plaintiff complained that he was having trouble

lifting trays due to his back pain and asked to see medical personnel. Instead, Plaintiff was granted a three-day "lay-in," during which he was permitted to remain in his cell.

On March 30, 2007, Plaintiff completed a resident request slip requesting to be seen by a doctor for his back pain because the medications prescribed were not treating his pain. On March 31, 2007, Plaintiff declared a medical emergency. Consequently, Plaintiff was transported by Defendant Darnold via wheelchair to the Health Care Unit.

Plaintiff complains about the way he was transported by Defendant Darnold. On March 31st, she brought a wheelchair to the bottom of the stairs near Plaintiff's cell. Plaintiff grabbed onto a pole to assist him in going down the stairs. Plaintiff alleges that from the time he limped out of his cell, Defendant Darnold was yelling at him, telling him that he would not receive any medication for his pain and that his pain was caused by a torn anterior cruciate ligament. Plaintiff claims that Defendant Darnold intentionally pushed his wheelchair at a high rate of speed over the cracks and bumps in the floor, exacerbating his back pain. Plaintiff claims that during the transport from his cell to the Health Care Unit, he told Defendant Darnold that he was going to file a grievance about her conduct and, in turn, Defendant Darnold threatened Plaintiff that if he did file a grievance against her, he would not receive treatment for his condition. Upon arrival at the Health Care Unit, Defendant Darnold transferred care to Defendant Clevy and had no further contact with Plaintiff.

When Plaintiff arrived at the Health Care Unit, he was placed under a 23-hour observation. Plaintiff alleges that he repeatedly requested that Defendant Clevy give him more pain medication but that such medication was denied throughout the morning, afternoon, and evening of March 31st. When the nursing shift changed, Plaintiff was given Tylenol for his pain.

On April 1, 2007, Defendant Clevy told Plaintiff that he would return to his cell after lunch. With the aid of another inmate, Plaintiff got dressed. Plaintiff alleges that Defendant Clevy denied his request for a wheelchair or crutches and, instead, gave him two Tylenol pills. Plaintiff then attempted to walk out of the Health Care Unit with help from other inmates, but his muscles spasmed, causing him to fall to the floor and yell in pain. Plaintiff eventually got back into bed with the help of another inmate, where he laid curled up in a ball. Defendant Clevy instructed him to stop screaming and to roll over on his back. Plaintiff said he needed helping turning over, at which time Defendant Clevy, who was standing at the foot of Plaintiff's bed, allegedly grabbed Plaintiff's ankles and "snatched" his legs straight. Plaintiff contends that Defendant Clevy then laughed as he writhed in pain. Plaintiff left the Health Care Unit on April 2, 2007.

During his May 28, 2010, deposition, Plaintiff summarized his claims:

1. Against Defendant Darnold for deliberate indifference to serious medical needs by transporting him in a rough and reckless manner from his cell to the Health Care Unit on March 31, 2007 (*see* Doc. 60-1 at 7). Plaintiff claims that the rough transport exacerbated his back pain (*id*.);

2. Against Defendant Clevy for deliberate indifference to serious medical needs for assaulting Plaintiff by snatching his legs straight while he was having a muscle spasm on April 1, 2007 (*see* Doc. 60-1 at 8-9). Plaintiff claims that Defendant Clevy's actions exacerbated his existing injuries and created new injuries in his lower legs (*id*. at 10). Plaintiff also alleges that Defendant Clevy exhibited deliberate indifference by failing to give him any pain medication and refusing to assist him in any way (*id*. at 8-10); and

3. Against Defendant Darnold for retaliating against him by withholding pain medication after he indicated on March 31, 2007, that he would file a grievance against her (*see* Doc. 60-1 at 14-16).

Plaintiff contends that his condition has worsened since this series of events. Specifically, he claims to suffer from numbness in his shin and sharp muscle pain in his leg; as a result he has to sleep with his feet crossed (Doc. 60-1 at 12).

## ANALYSIS

The standard applied to summary judgment motions filed under Rule 56 is well-settled and has been succinctly stated as follows.

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial. The evidence must create more than some metaphysical doubt as to the material facts. A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (internal citations and quotations omitted). The Court is mindful of this standard in its recitation of the facts above. Additional facts will be discussed in relation to the legal standards applicable to Plaintiff's claims.

"The Eighth Amendment's proscription against cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain' by the state." *Christopher v. Buss*, 384 F.3d 879, 881 (7th Cir. 2004), *quoting Hudson v. McMillian*, 503 U.S. 1, 5 (1992). A prison official's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain" that is prohibited under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation omitted). In order prevail on such a claim, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (internal quotations omitted); *accord Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir.

2007). With respect to the objective component of the inquiry, "[a] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jackson v. Illinois Med-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002).

Second, a prisoner must show that prison officials acted with a sufficiently culpable state of mind, namely deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104, *quoting Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense. Negligence, gross negligence, or even 'recklessness' as that term is used in tort cases, is not enough." *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987) (internal quotation omitted). Put another way, a plaintiff must demonstrate that the prison officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653.

The parties apply these well-established standards in an overly mechanical sense in their briefing. Based upon these facts, we are talking about cruel and unusual punishment – whether the alleged punishment is objectively, sufficiently serious, which implies conditions that are cruel and unusual under contemporary standards, and whether the defendant has a sufficiently culpable state of mind. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a

tumultuous cellblock."). In this case, we need not concern ourselves with what treatment was ordered and whether the nurses were authorized to do anything they did not do. Rather, Plaintiff's Eighth Amendment claims fail because Defendants' conduct, while it cannot be condoned, does not rise to the level of a constitutional violation.

"To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319. The only claim that Plaintiff can make under these facts is that Defendant Darnold's and Defendant Clevy's treatment of Plaintiff in pushing him aggressively in the wheelchair and yanking his legs straight, respectively, was objectively, sufficiently serious to constitute cruel and unusual punishment.[1] This is so whether Plaintiff's claims are couched as excessive force, deliberate indifference to serious medical needs, or failure to protect from harm to health and safety claims. *See generally Whitley*, 475 U.S. at 320 ("The general requirement that an Eighth Amendment claimant allege and prove the unnecessary and wanton infliction of pain should also be applied with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged."); *Christopher*, 384 F.3d 879; *Boddie v. Schnieder*, 105 F.3d 857 (2$^d$ Cir. 1997). Plaintiff requested to be transported to the Health Care Unit by wheelchair, and he asked for help when he was instructed to roll over. He now complains about the manner in which Defendants complied with these requests. This Court can envision a scenario where the manner of transportation provided to an ailing inmate would be objectively

---

[1] Plaintiff's complaint regarding the specific medical treatment that Defendants gave him – specifically, that they failed to administer additional pain medication – is belied by the medical records. Upon arriving at the Health Care Unit, Defendant Clevy telephoned Mary Loftin, M.D., a physician at the Lawrence Correctional Center. As will be discussed more below, Nurse Clevy followed the orders that were given and the standing orders for patients under 23-hour observation.

serious enough to implicate the Eighth Amendment, but this is not such a case. Defendant Darnold did not dump Plaintiff from his chair or drag him to the infirmary; Plaintiff complains that she intentionally hit the bumps and cracks in the floor while pushing him too fast. Likewise, Defendant Clevy straightened Plaintiff's legs so he could turn over. His complaints that Defendants did not treat him as gently as he would like in light of his aching back do not rise to the level of a constitutional violation. *See, e.g., Christopher*, 384 F.3d at 882 ("Unlike the acute risks posed by exposure to raw sewage, or inordinate levels of environmental tobacco smoke, or amputation from operating obviously dangerous machinery, or potential attacks by other inmates, the risk of being hit by a softball as a result of a hazardous field condition is not one that 'today's society chooses not to tolerate.'") (internal citations omitted).

Alternatively, Defendants' conduct does not rise to the level of deliberate indifference to Plaintiff's back pain. Per Plaintiff's request, Defendant Darnold transported Plaintiff via wheelchair; she did not make him walk to the Health Care Unit. Defendant Clevy followed the orders given by Mary Loftin, M.D., a physician at the Lawrence Correctional Center, as well as the standing protocol for patients under observation. While Plaintiff's allegations that Defendant Darnold yelled at him and Defendant Clevy laughed at his pain are disconcerting, such conduct – while rude and insensitive – does not rise to the level of deliberate indifference. After the encounter with Defendant Clevy, Plaintiff was admitted to the infirmary for acute care per Dr. Loftin's telephone order. He remained in the infirmary until he was able to return to his cell the next day. He continued treatment under Dr. Loftin's care until she left the Lawrence Correctional Center in April 2008. These events do not reflect deliberate indifference to Plaintiff's back pain. *See Sellers v. Henman*, 41 F.3d 1100, 1102-03 (7th Cir. 1994) (inappropriate medical treatment

based on pure negligence, or even a series of purely negligent acts, is not the same as deliberate indifference to a serious medical need).

To prevail on his retaliation claim against Defendant Darnold, Plaintiff must prove that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in [Defendant Darnold's] decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotation omitted). Plaintiff cannot establish that his threat to file a grievance against Defendant Darnold is a constitutionally protected activity. *See id.* ("it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance"). Even if the threat were deemed protected activity, Plaintiff cannot establish the other two elements because he did in fact receive medical treatment for his back and leg pain from the prison physician for over a year. Consequently, Plaintiff's retaliation claim fails.

Because the Court grants summary judgment on the merits of Plaintiff's claims, it need not consider Defendants' qualified immunity arguments.

Finally, the Court thanks appointed counsel, Brant M. Feltner of the law firm Greensfelder, Hemker, & Gale, P.C., for his pro bono service in this case. He is **DISCHARGED** as counsel in this matter. Attorney Feltner is advised that he may request reimbursement of recoverable out-of-pocket expenses by submitting a completed and itemized Authorization/Certification for Reimbursement form, which can be found on this Court's website, www.ilsd.uscourts.gov, using the Rules & Forms tab on the home page and selecting Forms for Attorneys. Questions regarding the submission of this form may be addressed to the Clerk's Office at (618) 482-9371.

## CONCLUSION

For the forgoing reasons, Defendants' motion for summary judgment (Doc. 60) is **GRANTED**, and this action is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: 09/14/11

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge